IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RENEÉ COLEMAN,

                    Plaintiff,

        v.

SUN PRAIRIE AREA SCHOOL DISTRICT,

                    Defendant.

OPINION and ORDER

25-cv-457-jdp

---

Plaintiff Reneé Coleman was the principal for Sun Prairie East High School, and she was employed by defendant Sun Prairie Area School District. Proceeding without counsel, Coleman alleges that the district discriminated against her because of her race, color, and sex by suspending her and then forcing her to resign, in violation of Title VII of the Civil Rights Act.[1]

The district moves for summary judgment on multiple grounds, but I need consider only one of them, which is that Coleman has not provided evidence that the district took any adverse action against her because of her race, color, or sex. Rather, the undisputed facts show that the district honestly believed that Coleman had mocked and disparaged students and coworkers and repeatedly disregarded a co-worker's chosen name and pronouns. Those reasons do not implicate Title VII, even if the district was mistaken, so I will grant the district's motion for summary judgment.[2]

---

[1] Coleman originally asserted a claim under the Wisconsin Fair Employment Act as well, but I granted the district's motion to dismiss that claim on procedural grounds. Dkt. 13.

[2] Coleman does not assert a claim that she had the right under the First Amendment not to use the co-worker's chosen name or pronouns, so I do not consider that issue.

UNDISPUTED FACTS

The following facts are undisputed.

The district hired Coleman as the principal for Sun Prairie East High School in 2021. She is an African American woman.

In 2024, the district received a complaint that Coleman had made inappropriate comments during the staff convocation in August, including the following: calling students a "retard" or a "bitch," raising her middle finger, and calling a district employee a "fat ass." In response, the district hired attorney Emery Harlan to investigate the allegations.

While the first investigation was pending, the district received a second complaint. The details of the complaint are vague. The parties say only that a school representative from the Sun Prairie Education Association alleged that Coleman "intentionally and repeatedly misgendered an employee." Dkt. 27, ¶ 9. The district again asked Harlan to investigate.

Harlan interviewed several witnesses, including Coleman, about both sets of allegations. He issued a separate report for each set of allegations on October 18. As for the first allegation about name calling, Harlan's report included the following findings:

- Coleman made fun of students performing a dance routine during the convocation and referred to them as "retards."

- Referring to one of the students performing the dance routine, Coleman stated that the "bitch does not know her shit, should not be out there, and should just sit down."

- Coleman participated in a discussion with certain members of her staff involving an employee needing to lift her boobs to wipe off sweat and conducting personal hygiene in private bodily areas.

- Coleman raised her middle finger to another employee in mockery of the need for sign language interpreters.

- Coleman referred to an employee as a "fat ass."

Dkt. 17-1. Based on these findings, Harlan concluded that Coleman violated school district policies and rules regarding treating students and staff with dignity and respect, creating a welcoming climate, and demonstrating leadership, among other things. *Id.* The report emphasized Coleman's responsibilities as the principal.

As for the allegation about misgendering, Harlan's report found that Coleman had repeatedly referred to an employee using he/him pronouns despite knowing the employee's preference to use they/them pronouns. Harlan also found that Coleman did not call the employee by their preferred name. Harlan again concluded that Coleman violated policies regarding treating staff with dignity and respect, among other things. Dkt. 17-2.

After reviewing Harlan's reports and consulting with Shana Lewis (the district's legal counsel), Brad Saron (the school superintendent) suspended Coleman without pay, beginning on October 21, 2024, and continuing until the school board made a decision on Coleman's employment. In a letter to Coleman, Saron explained that his decision was based on Harlan's reports.

On November 5, Coleman met with Saron and Lewis. Lewis informed Coleman that the district would be recommending to the school board that Coleman be terminated. (The district did not have authority to terminate Coleman without approval by the board.) Lewis informed Coleman that she could avoid a school board hearing if she resigned and entered into a "resignation agreement." On November 8, Coleman and the district entered into an agreement under which Coleman resigned in exchange for severance pay and other benefits. On November 22, the district terminated the agreement on the ground that Coleman violated a non-disparagement provision in the agreement.

3

ANALYSIS

## A.  Overview of the claims

Coleman alleges in her complaint that the school district discriminated against her because of her race, color, and sex, in violation of Title VII. She also alleges that she "reported concerns about discriminatory treatment to supervisors and/or human resources, but no remedial action was taken." Dkt. 1-1, ¶ 11.

Coleman is somewhat vague regarding what adverse actions she is challenging. Her complaint says that the adverse actions "includ[e], but [are] not limited to termination, discipline, and harassment." *Id.* ¶ 12. In her summary judgment materials, she discusses two potential adverse actions: her suspension and her resignation, which she says was coerced. But she does not identify any racial or sexual harassment in her complaint or in her summary judgment materials. So if Coleman intended to raise a claim for a hostile work environment, she forfeited it by failing to provide a factual basis for it.

The district asserts the following arguments in its summary judgment brief: (1) Coleman did not exhaust her administrative remedies on claims for discrimination based on color or retaliation; (2) Coleman's resignation was not forced, so she cannot prevail on a claim for constructive discharge; and (3) she does not have evidence of discrimination or retaliation. Coleman did not assert a retaliation claim in her complaint or her summary judgment materials, so I need not consider whether she exhausted that claim or whether any evidence supports that claim. As for Coleman's claims for race, color, and sex discrimination, I conclude that Coleman does not have evidence supporting those claims, so it is not necessary to consider whether she exhausted her administrative remedies or whether she was constructively discharged.

It is unlawful under Title VII for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex." 42 U.S.C.A. § 2000e-2(a)(1). Coleman's claim can be broken into two elements: (1) the district subjected Coleman to a "disadvantageous" term or condition of employment, *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024); and (2) the district's conduct was "because of" Coleman's race, color, or sex. The employer's conduct occurs "because of" a protected characteristic when that characteristic "was a motivating factor for [the conduct], even though other factors also motivated the [conduct]." 42 U.S.C.A. § 2000e-2(m). For the purpose of this opinion, I will assume that Coleman's suspension and resignation were both disadvantageous terms or conditions of her employment. This leaves the question whether her race, color, or sex was a motivating factor in the district's decisions.

On a motion for summary judgment, the question is whether there are any genuine disputes of material fact. Fed. R. Civ. P. 56(a). A factual dispute is genuine if it is based on admissible evidence that actually contradicts opposing evidence. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). A genuine factual dispute is material if it could make a difference to the outcome of the case, or, in other words, a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). So to defeat the district's motion for summary judgment, Coleman must come forward with evidence that would allow a reasonable to jury to find that the district was motivated by her race, color, or sex when it suspended her or forced her to resign. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764–

65 (7th Cir. 2016); *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (citation omitted).

Coleman does not cite any direct evidence of discrimination or any circumstantial evidence that is explicitly about her race, color, or sex. Instead, she says that four types of evidence support an inference of discrimination: (1) her own testimony that the allegations of misconduct against her are false; (2) evidence that the investigation was flawed; (3) evidence that other district employees were treated better than she was; and (4) evidence that she had a positive work history. Coleman also discusses an allegation that the district did not take seriously an allegation that she made against the athletic director. At the end of her brief, Coleman says that the court should deny the district's summary judgment motion as premature under Federal Rule of Civil Procedure 56(d) so that she can conduct discovery.

For the reasons below, I conclude that Coleman has not cited evidence that would allow a reasonable jury to find in her favor, and she has not satisfied the standard for obtaining relief under Rule 56(d).

## B.  Coleman's testimony

Coleman's primary contention is that summary judgment is improper because there are disputed facts about whether she engaged in any misconduct. She denies that she made disparaging comments about students and staff, and she denies that she intentionally misgendered a coworker.

For the purpose of the district's summary judgment motion, I must accept as true that Coleman did not do the things she was accused of. But that does raise a material factual dispute because "Title VII is not a 'good cause' statute." *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 979 (7th Cir. 2000). The court of appeals has emphasized this numerous times:

courts do not sit as a "super-personnel department" to re-examine the reasonableness or correctness of the employer's decisions. *Wilson v. AIM Specialty Health*, 176 F.4th 977, 986–87 (7th Cir. 2026); *Paterakos v. City of Chicago*, 147 F.4th 787, 799 (7th Cir. 2025). So the question before the court is not whether the allegations against Coleman are true or whether the district made a mistake. *See Collins v. American Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013). Rather, Coleman must show that the district did not honestly believe its reasons for disciplining her. *See id.*

In this case, the decisionmakers did not personally witness any of the conduct at issue, so they retained a third party to investigate, and the district relied on the investigator's report to justify its decision. Title VII did not require the district to independently evaluate the evidence and conduct its own credibility assessment. Coleman points to no evidence that the district asked for an investigation in bad faith or believed the investigation was a sham. So the fact that Coleman disputes the allegations against her does not create a genuine dispute of material fact.

## C. Alleged flaws with the investigation

Coleman criticizes Harlan's investigation on three grounds: (1) there were witnesses who sided with Coleman, but Harlan did not credit those witnesses;[3] (2) there was no video evidence of any misconduct by Coleman; and (3) a district official asked one of the witnesses to reconsider her testimony. Harlan did not make the final decision to discipline Coleman, but

---

[3] Coleman also alleges in her declaration that she "became aware that certain witnesses present during the convocation were allegedly not interviewed as part of the investigation." Dkt. 23, ¶ 25. But she does not explain how she became aware of this, she does not identify any witness who was excluded, and she cites no evidence either that Harlan excluded a witness because of Coleman's race, color, or sex or that any excluded witness would have made a statement that was favorable to her. So Coleman's allegation about excluded witnesses is not helpful.

the district relied on Harlan's reports when deciding to suspend Coleman. Even when an employer does not act with discriminatory intent, the employer can be held liable under Title VII if a non-decisionmaker with discriminatory intent causes the adverse employment action. *Jajeh v. County of Cook*, 678 F.3d 560, 572 (7th Cir. 2012).

Coleman's first two criticisms do not support her claims, and the third criticism is not supported by admissible evidence. As for Harlan's decision to credit some witnesses and not others, it was necessary for Harlan to do that because witnesses gave conflicting answers.[4] Harlan gave reasons for crediting some witnesses over others, explaining that the four witnesses who corroborated the allegations against Coleman were forthcoming, responsive to questions, did not speculate, and had no apparent motive for fabricating allegations against Coleman. Dkt. 17-1, at 3. In contrast, Harlan wrote that Coleman and the four witnesses who supported her had varying credibility problems, including that they had limited recall, gave terse answers, seemed evasive, and had a motive to take Coleman's side because some of the alleged statements and conduct were attributed to them. *Id.* at 2–3. Coleman identifies no basis for challenging Harlan's credibility assessment.

As for the lack of video evidence, there is no requirement in Title VII that an employer support a disciplinary decision with that type of evidence. Coleman says that the district relied on video evidence when investigating an employee who grabbed a student. But even if that is true, Coleman points to no evidence that the district has a policy that requires a video or audio

---

[4] This applies only to the allegations about name calling. Harlan reported that all of the witnesses he interviewed about Coleman misgendering and using the wrong name (except for Coleman herself) confirmed that Coleman had done that repeatedly despite being told not to. Dkt. 17-2. Coleman does not identify any witnesses other than herself who disputed Harlan's account.

recording before disciplining an employee or that it has not disciplined other employees in the absence of such evidence.

As for Coleman's allegation that a district official tried to influence a witness's testimony, Coleman says in her declaration that someone named Michael Morgan "suggested [to an employee that] she reconsider or change portions of her prior statements relating to the investigation." Dkt. 23, ¶ 44. The declaration cites an email from the same employee who wrote that Morgan told her during a conversation that, "if I recall anything different from my statements that this was the time to tell" district administrators. Dkt. 23-3.

Coleman's statement in her declaration and the cited email do not help Colemen for numerous reasons: Coleman does not have personal knowledge of the conversation, so she cannot testify about it; the employee's email is hearsay, so it is inadmissible; Coleman neither identifies who Morgan is nor cites evidence that Morgan was involved in deciding whether to discipline Coleman; the email does not discuss Coleman, so I cannot reasonably infer that the email was about her; Coleman cites no evidence that the employee was a witness in the investigation about Coleman; the cited email does not say that the employee changed any of her statements; and the email refers to a conversation on October 22, which was four days after Harlan issued his reports, so it could not have affected his investigation or the reports he issued.

The bottom line is that Coleman does not have evidence that Harlan prejudged the investigation, *see Hobgood v. Illinois Gaming Bd.,* 722 F.3d 1030, 1040 (7th Cir. 2013), or that the investigation was otherwise biased. Coleman's disagreement with Harlan's findings is not evidence of discrimination.

## D. Treatment of other employees

Coleman says that another employee who made derogatory comments about a student was not disciplined. She cites an email from the employee that included the following language:

> Is there anything we can do to make these kids go to class or at least to quiet down and stop swearing every two words? Other students are tired of it also. They don't listen to me and only get worse. One is screeching like a monkey or something right now. This is ridiculous.

Dkt. 23-9. Coleman focuses on the phrase "screeching like a monkey" as derogatory.

More favorable treatment of a similarly situated employee outside the plaintiff's protected class can support a discrimination claim. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 05 (7th Cir. 2014). Two employees are similarly situated if they are "directly comparable . . . in all material respects so as to eliminate other possible explanatory variables." *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 810 (7th Cir. 2025) (internal quotation marks).

The email Coleman cites does not help to show that the district treated other employees more favorably, for multiple reasons. First, Coleman does not identify the race or sex of the other employee, so I cannot tell whether the employee is outside Coleman's protected class. If the other employee is a Black woman, any favorable treatment she received would not be evidence of race, color, or sex discrimination.

Second, Coleman says in her brief that the other employee "was not subjected to disciplinary measures comparable to those imposed against Plaintiff." Dkt. 20, at 9. But Coleman does not cite any actual evidence of what discipline the other employee received. So I cannot reasonably infer that the other employee was treated more favorably.

Third, complaining about the noises a student is making is not comparable to calling someone a "retard," a "bitch," and a "fat ass," and mocking people who are deaf, especially as

10

the school principal making comments in a public place. Harlan's reports emphasized Coleman's obligation to set an example as the principal, so Coleman is not similarly situated to employees in less prominent roles who engaged in less serious conduct in a less public setting. *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 472 (7th Cir. 2025) (employees with different responsibilities often are not similarly situated); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (employees are not similarly situated unless they engaged in misconduct of comparable seriousness). An employer is allowed some leeway in determining the comparative seriousness of an offense. *See Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012).

Fourth, Coleman does not cite evidence that Saron or anyone else involved in disciplining her even knew about the other employee's comment about the student. Any failure to discipline the other employee cannot be evidence of discriminatory intent if the relevant decisionmakers were never informed that there was anything to discipline. *See Smith v. Chicago Transit Auth.*, 806 F.3d 900, 907 (7th Cir. 2015) (employees are not similarly situated if different decision makers were involved).

Coleman does not have evidence that the district treated other employees outside her protected class more favorably.

### E.  Positive work history

Coleman says that it was unfair for the district to suspend and terminate her because she did not have any prior misconduct on her record. Coleman does not cite any evidence that the district violated a progressive discipline policy, but even if it had, this argument fails for the same reason as Coleman's argument that the district should not have fired her because she denies any wrongdoing, which is that Title VII is not a "good cause" statute. Adverse actions

11

despite positive performance can be evidence of pretext in certain contexts, but it is the employee's performance at the time of the adverse action that matters, not past performance. *See Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2008). Coleman cites no evidence that the district retained other employees who committed similar misconduct simply because they had performed well in the past, so evidence of positive past performance is not evidence of discrimination.

### F. Allegation against other district employee

In her declaration, Coleman describes an incident in which she complained to the assistant superintendent and the secondary director that the athletic director had made her feel "targeted and uncomfortable" during a meeting, but Coleman "did not believe her concerns were adequately addressed." Dkt. 23, ¶¶ 55–60.

Coleman does not explain the relevance of this allegation, and I cannot discern any. If Coleman means to argue that the incident shows discriminatory intent because the athletic director was not disciplined despite making derogatory comments, that argument fails because Coleman does not identify what the athletic director said, and she does not allege that any of the decisionmakers in this case were aware of the comments. So she has not shown that the athletic director was similarly situated to her.

If Coleman means to argue that the failure to address her concerns is evidence of bias against her, that argument again fails because Coleman does not cite evidence that anyone involved in disciplining her was aware of the allegation against the athletic director.

If Coleman means to argue that she was subjected to a hostile work environment, that argument would fail because Coleman does not cite evidence that the athletic director's comments were about her race, color, or sex or that the athletic director's comments were

12

sufficiently severe or pervasive to qualify as discrimination under Title VII. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). Regardless of why Coleman included the allegation in her summary judgment materials, it does not support her claims.

**G. Rule 56(d)**

At the end of her brief, Coleman says that the district's summary judgment motion is "premature" under Rule 56(d) because she has not had "a meaningful opportunity to conduct discovery." Dkt. 20, at 14 Rule of 56(d) allows a court to deny or defer consideration of a summary judgment motion if the nonmoving party shows that "it cannot present facts essential to justify its opposition."

To obtain relief under Rule 56(d), the nonmoving party must do three things: (1) identify "specific evidence" she seeks to support her claims; (2) explain how that evidence would defeat the pending summary judgment motion; and (3) show that she exercised reasonable diligence in attempting to conduct discovery sooner. *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019); *PlaDavis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005); *United States v. All Assets & Equipment of West Side Building Corp.*, 58 F.3d 1181, 1190–91 (7th Cir. 1995). Moreover, a party who seeks relief under Rule 56(d) should file a separate motion soon after the summary judgment motion is filed to alert the court that more time is needed. *See De Jesus v. De Jesus*, No. 11-cv-579-bbc, 2012 WL 13042522, at *7 (W.D. Wis. Apr. 3, 2012) ("[P]laintiffs should have filed a motion under Fed. R. Civ. P. 56(d) as soon as defendants filed their own summary judgment motion."); *see also Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) (party should "move for a continuance and submit an affidavit explaining why the additional discovery is necessary").

Coleman has not satisfied Rule 56(d)'s requirements. She did not file a separate Rule 56(d) motion, and she has not shown reasonable diligence in failing to conduct discovery sooner. In fact, she does not say that she has tried to do *any* discovery in this case.

Coleman says that she "requested access to work-related communications and records relating to prior incidents during Plaintiff's employment but did not receive the requested materials." Dkt. 20, at 15. Coleman does not explain how those "communications and records" would support her claim. Regardless, that request did not occur in the context of this lawsuit. Rather, Coleman says that she made a verbal request to "District legal counsel" during a meeting that occurred before this lawsuit was filed. Dkt. 23, ¶¶ 60–65. Any request for documents that Coleman sent the district before discovery began has no legal significance for this case. If Coleman believed that the district had documents that would support her claims, it was her obligation to submit a request for production of documents under Rule 34. She did not do that, so her request to defer a summary judgment decision is denied, and the district's motion for summary judgment is granted.

### ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Sun Prairie Area School District, Dkt. 14, is GRANTED. The clerk of court is directed to enter judgment and close this case.

Entered July 9, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14